it (such as telephone listings of clients and suppliers, speed dialing features and voice mail) are also likely to be present in a trafficker's residence and will confirm prior contacts with suppliers and customers. Here, that equipment and those documents are likely to be anywhere inside Target Premises 1 and Target Premises 2.

61. During the course of residential searches, I and other agents have also found items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the subject premises. Such identification evidence is typical of the articles people commonly maintain in their residences, such as cancelled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, and keys. Firearms have also been recovered during some of those searches and I am aware that drug traffickers frequently possess and use firearms to protect their illegal drug businesses.

62. My awareness of these trafficking practices, arises from my own involvement in prior drug investigations and searches during my career as a law enforcement officer, my involvement on a number of occasions in debriefing confidential informants and cooperating individuals in prior investigations, as well as what other law enforcement agents and officers have advised me when

29

relating the substance of their similar debriefings and the results of their own drug investigations, and other information provided through law enforcement channels.

## ITEMS TO BE SEIZED FROM TARGET PREMISES 1

63. Based upon all of the information I have obtained during the course of this investigation, and for the reasons more specifically set forth above, I submit that there is probable cause to believe that evidence regarding illegal drug activities will be found in Target Premises 1. More specifically, I submit that there is probable cause to believe that the following items of evidence will be found in Target Premises 1:

1. Heroin, cocaine, and marijuana.

2. Paraphernalia for the packaging, processing and distribution of controlled substances such as heroin, to include packaging materials (such as the pink wax and rubber like materials used to package the heroin in this case), plastic bags and seals, scales, "cutting" agents used to dilute/extend heroin prior to sale, and electronic pagers and cellular telephones used to communicate with drug associates (such as the cellular telephone used by DELGADO to communicate with the CW).

3. Books, records, notes, ledgers, and any other papers or records relating to the purchase or distribution of heroin and/or firearms, and/or records or electronic devices reflecting the identity of co-conspirators and drug and/or firearm customers, as well as their addresses, telephone, and pager numbers. Such documents include, but are not limited to, telephone address books, planners, notes, ledgers, bank records, money orders, wire transfers, cashier's checks, passbooks, certificates of deposit, bills, vehicle rental receipts, credit card receipts, and/or telephone bills.

4. Cash and currency, and other items of value made or

30

derived from trafficking in illegal substances or documents related thereto. Such items include, but are not limited to jewelry, titles, deeds, monetary notes, registrations, purchase or sale invoices, bank records, or any other papers concerning financial transactions relating to obtaining, transferring, laundering, concealing, or expending money or other items of value made or derived from trafficking in illegal substances.[13]

5. Documents reflecting dominion and/or control of 30 May Street, Apartment C, Lawrence, MA, including, but not limited to, canceled mail, photographs, personal telephone books, diaries, bills and statements, videotapes, keys, identification cards and documents, airline tickets and related travel documents, bank books, checks, and check registers.

6. Documents or tangible evidence reflecting dominion, ownership, and/or control by VICTOR DELGADO over any bank accounts, safe deposit boxes, stocks, bonds, mutual funds, and any other financial and/or monetary assets, instruments or interests, and over any tangible assets such as motor vehicles, real property, and commercial storage facilities.

7. Photographs of individuals, property, and/or illegal controlled substances.

8. Firearms, including ammunition, magazines, holsters, and any components of firearms.

**ITEMS TO BE SEIZED FROM TARGET PREMISES 2**

64. Based upon all of the information I have obtained during the course of this investigation, and for the reasons more specifically set forth above, I submit that there is probable cause to believe that evidence regarding illegal drug activities

---

[13] During a controlled sale of heroin on November 11, 2003, DELGADO told the CW that he (DELGADO) had just finished having a house built in San Juan, Puerto Rico, that he also owns houses in Carolina and Rijo Pidra, Puerto Rico, and owns two vehicles.

31

will be found in Target Premises 2. More specifically, I submit that there is probable cause to believe that the following items of evidence will be found in Target Premises 2:

1. Heroin.

2. Paraphernalia for the packaging, processing and distribution of controlled substances such as heroin, to include packaging materials (such as the pink wax and rubber like materials used to package the heroin in this case), plastic bags and seals, scales, "cutting" agents used to dilute/extend heroin prior to sale, and electronic pagers and cellular telephones used to communicate with drug associates.

3. Books, records, notes, ledgers, and any other papers or records relating to the purchase or distribution of heroin and/or firearms, and/or records or electronic devices reflecting the identity of co-conspirators and drug and/or firearm customers, as well as their addresses, telephone, and pager numbers. Such documents include, but are not limited to, telephone address books, planners, notes, ledgers, bank records, money orders, wire transfers, cashier's checks, passbooks, certificates of deposit, bills, vehicle rental receipts, credit card receipts, and/or telephone bills.

4. Cash and currency, and other items of value made or derived from trafficking in illegal substances or documents related thereto. Such items include, but are not limited to jewelry, precious metals, titles, deeds, monetary notes, registrations, purchase or sale invoices, bank records, or any other papers concerning financial transactions relating to obtaining, transferring, laundering, concealing, or expending money or other items of value made or derived from trafficking in illegal substances.

5. Documents reflecting dominion and/or control of 9 Ohio Street, Apartment 2, and the vacant first floor apartment (designated as 7 Ohio Street), including, but not limited to, canceled mail, photographs, personal telephone books, diaries, bills and statements, videotapes, keys, identification cards and documents, airline tickets and related travel documents, bank

32

books, checks, and check registers.

6. Documents or tangible evidence reflecting dominion, ownership, and/or control by JOAN REYES-SANTANA over any bank accounts, safe deposit boxes, stocks, bonds, mutual funds, and any other financial and/or monetary assets, instruments or interests, and over any tangible assets such as motor vehicles, real property, and commercial storage facilities.

7. Photographs of individuals, property, and/or illegal controlled substances.

8. Firearms, including ammunition, magazines, holsters, and any components of firearms.

## NO KNOCK AUTHORITY

64. For the following reasons, as well as those already presented herein, I am also requesting permission to enter Target Premises 1 without knocking. DELGADO has a history of violent crime, including violent crimes against law enforcement officers. DELGADO has convictions for assault and battery on a police officer and resisting arrest (2000), as well as assault and battery and threatening (1999). He also has a 2003 case pending in Lawrence District Court for possession with intent to distribute heroin, resisting arrest, and assault and battery on a police officer.

65. On November 19, 2003, DELGADO sold the CW the use of DELGADO's .357 magnum. During a prior controlled buy, the CW saw a .357 magnum under the couch in DELGADO's living room -- a location that suggests it was placed there to be in easy reach if needed. During the December 8, 2003 controlled buy, DELGADO told

33

the CW that "nowadays things are bad and you always have to have a metal [i.e., a firearm] on you". DELGADO also said that he had a .40 caliber handgun but could not sell it to the CW because it was "dirty" (i.e., had been used in a shooting), and said that he had "four AKs" (i.e., four AK-47 semi-automatic rifles) that he could not sell the CW and that "EDDY" had given him a gun that he had stashed.[14] Finally, during a recorded conversation between the CW and LOPEZ on December 30, 2003, LOPEZ told the CW that DELGADO was acting crazy and that DELGADO's girlfriend had recently caught him sniffing heroin.

66. The information contained herein establishes that execution of the search warrant on DELGADO presents a significant risk to the safety of the executing officers. The agents executing the warrant at Target Premises 1 should therefore be entitled to enter Target Premises 1 without knocking.

## CONCLUSION

67. Based on the forgoing, I believe there is probable cause to believe that, from at least November 2003 to at least December 2003, VICTOR DELGADO, A/K/A "BITIN", and JOAN REYES-SANTANA, A/K/A "FLAKO", conspired to possess with intent to distribute and to distribute heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §846; that on November 19,

---

[14] Detective Brooks, who is fluent in Spanish, heard this on the audio tape of the December 8, 2003 meeting between DELGADO and the CW.

2003, DELGADO, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce, a firearm, to wit: a loaded, Ruger .357 magnum handgun, in violation of 18 U.S.C. §922(g)(1); that on December 8, 2003, DELGADO possessed with intent to distribute and distributed heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §841(a)(1); and that, on January 12, 2004, REYES-SANTANA possessed with intent to distribute and distributed heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §841(a)(1).

68. Based upon the foregoing, and based upon my training and experience, I also submit that there is probable cause to believe that the premises located at 30 May Street, Apartment C, Lawrence, Massachusetts, which are more specifically described above, and the premises located at 9 Ohio Street, Apartment 2, and the vacant first floor apartment (designated as 7 Ohio Street, Apt. 1), Lawrence, MA, presently contain the items set forth above, and that those items constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, things otherwise criminally possessed, and property designed or intended for use or which is or has been used as the means of committing a criminal offense, specifically, violations

35

of 21 U.S.C. §§ 846 and 841(a)(1), as well as 18 U.S.C. § 922(g)(1). Accordingly, I respectfully request that search warrants be issued for the seizure of these items in Target Premises 1 and in Target Premises 2.

_____
JEFFREY E. WOOD, JR.
Special Agent, FBI

Subscribed and sworn to
before me, this 19th day
of January, 2004

_____
ROBERT B. COLLINGS
United States Magistrate Judge